# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

Nº 08-CV-1124 (JFB)

## WAYNE GASKIN,

Petitioner,

### VERSUS

## HAROLD GRAHAM, Superintendent, Auburn C.F.,

Respondent.

**MEMORANDUM AND ORDER**
December 30, 2009

JOSEPH F. BIANCO, District Judge:

Wayne Gaskin (hereinafter, "petitioner" or "Gaskin") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. Petitioner was convicted of depraved indifference second-degree murder and third-degree criminal possession of a weapon in a judgment rendered on October 10, 2002, following a jury trial in County Court, Suffolk County. Petitioner was sentenced to twenty-five (25) years to life imprisonment for the murder conviction, and three-and-a-half (3 ½) to seven (7) years for the weapons possession conviction, to be served concurrently.

On appeal, the New York Appellate Division, Second Department, affirmed petitioner's conviction. *People v. Gaskin*, 802 N.Y.S.2d 751 (App. Div. 2005). The New York Court of Appeals denied leave to appeal.

*People v. Gaskin*, 845 N.E.2d 1283 (N.Y. 2006).

Petitioner challenges his conviction on the following grounds: (1) under the New York depraved indifference murder statute, (a) the evidence was insufficient at trial to establish the "circumstances evincing a depraved indifference to human life" element of reckless murder, of which petitioner was convicted at trial; and (b) the criminal statute was "vague as applied to petitioner"; and (2) petitioner received ineffective assistance of appellate counsel due to appellate counsel's (a) failure to argue that the trial court improperly refused to respond to a jury note regarding the distinction between depraved indifference murder and intentional murder; (b) failure to argue for the dismissal of the depraved indifference murder charge on the ground that there was a lack of evidence to prove recklessness and failure to argue that "depraved indifference" to human life is the mens rea element of second-degree

reckless murder[1]; (c) failure to properly "federalize" and exhaust each of petitioner's claims on appeal; and (d) failure to raise ineffective assistance of trial counsel for not objecting to the procedure used by the trial court to administer the jury oath at trial. For the reasons discussed below, the Court denies petitioner's request for a writ of habeas corpus in its entirety on the merits.[2]

## I. BACKGROUND

### A. The Underlying Facts

The following facts are adduced from the instant petition and the underlying record.

Petitioner lived at 125 Babylon Street, Islip Terrace, New York, with his girlfriend of several years, Sharline Clarkston. Gaskin and Clarkston rented out the downstairs apartment of their home to Clarkston's nineteen-year old nephew, Tony Darnell Jones, and his friend, Stephan Peat. (Tr. 298, 246-49.) The rental agreement commenced in June 2000 and ran for one year, until June 2001. During the course of the tenancy, a dispute arose over Jones's and Peat's suspected selling of marijuana from the apartment. (Tr. 249-50, 309.) The dispute worsened, and Clarkston and Gaskin ultimately agreed that the lease would not be extended after the year was up. (Tr. 250-52.)

On June 3, 2002, Gaskin spoke with Clarkston on the phone and, sensing something was wrong, returned home. (Tr. 257.) Indeed, just before the phone conversation, Peat had slammed a door in Clarkston's face as she was trying to discuss the termination of the lease with him. (Tr. 255.) Upon his return home, Gaskin tried to get Jones to come out of his apartment so they could discuss the lease, but Jones did not answer. Clarkston then shouted through an open window for Jones to come outside and talk, which he did. As Jones was exiting the apartment, he exchanged heated words with Gaskin. Jones stated, "I'm tired of you treating me like a boy. I'm a man. Let's go to the end of the block and fight." (Tr. 265.) According to witness testimony, Gaskin replied, "You're lucky you're her nephew. I would have blazed you," or "I would have did you a long time ago." (Tr. 117, 119, 265.) Clarkston intervened and urged her nephew to ignore Gaskin and come towards her so they could discuss the termination of the lease and the selling of marijuana. (Tr. 265.) Clarkston told Jones that he needed to leave the apartment immediately, but Jones wanted to stay through the end of the month, which Clarkston was opposed to. (Tr. 268.) Throughout this conversation, Gaskin was pacing back and forth, listening to Clarkston and Jones, and getting agitated. (Tr. 267.) As he listened to them and became more excited, he threw a cordless phone at Jones, which missed him but struck either the house or stairs. (Tr. 270.) The prosecution's witnesses testified differently regarding the actual shooting. Sharline Clarkston, Gaskin's girlfriend, testified that she heard a popping noise and then noticed Jones's left ear filling up with blood. (Tr. 278-79.) Clarkston exclaimed that Gaskin shot Jones, although her direct view was blocked, to which Gaskin replied that it was an accident. (Tr. 273-75, 336.) Latoya Hassan, a guest in Jones's apartment, testified that she watched the

[1] The Court has combined petitioner's second and third ineffective assistance of counsel claims in his amended petition, both of which relate to petitioner's conviction under the depraved indifference murder statute in New York.

[2] Petitioner also filed a motion for summary judgment with the Court on June 12, 2009. For the reasons herein, petitioner's motion for summary judgment is also denied.

altercation through the window of the basement apartment and testified that Gaskin "had the gun to [Jones's] head and he shot him." (Tr. 124.) Toniah Henderson, a friend of Ms. Clarkston's who was also present the day of the shooting, testified that "Wayne jumped up the steps, then I heard a pop." (Tr. 398.) Latavia Hassan, another guest in Jones's apartment, also testified that she saw the shooting from the basement window, and that Gaskin "had a gun in his hand and his arm was fully extended out to [Jones's] head. . . . Then [Gaskin] shot him." (Tr. 539-40.)

After the shooting, Gaskin ran and hid the gun, burying it in the ground a short distance away. When police investigators arrived at the scene, Gaskin told them that someone else shot Jones and had run away. (Tr. 64, 288.) However, other witnesses identified Gaskin as the shooter, and he was arrested. (Tr. 124.) At trial, the only alleged eyewitnesses of the actual shooting, Latoya and Latavia Hassan, testified that they saw what happened through a small window in the basement. (Tr. at 121, 540.)

The defense did not call any witnesses at trial or otherwise put on a case, but argued through cross-examination and summation that the shooting was not intentional, but rather accidental. (Tr. at 848.) Specifically, defense counsel, on cross-examination of ballistics experts and the medical examiner's office, presented the theory that the gun malfunctioned as Jones's hand brushed against Gaskin's. (Tr. at 694, 754.)

B. Procedural History

Petitioner was convicted in a judgment rendered on October 10, 2002, following a jury trial in County Court, Suffolk County. Petitioner was convicted of reckless second-degree murder (N.Y. Penal Law § 125.25(2)) and third-degree criminal possession of a weapon (N.Y. Penal Law § 265.02). Petitioner was acquitted of intentional second-degree murder (N.Y. Penal Law § 225.25(1)). Petitioner was sentenced to twenty-five (25) years to life imprisonment for the murder conviction, and three-and-a-half (3 ½) to seven (7) years for the weapons possession conviction, to be served concurrently.

On May 25, 2004, Gaskin appealed his conviction to the New York State Appellate Division, Second Department, on the following grounds: (1) the trial court erred by denying Gaskin's request to charge the jury with manslaughter in the second degree as a lesser-included offense of depraved indifference murder; (2) New York Penal Law 125.25(2), Depraved Indifference Murder, is impermissibly vague and violates both the New York State Constitution and the federal Constitution; (3) the trial court denied defendant a fair trial by refusing to permit the defense to elicit testimony involving: (a) acts of violence by the victim and his roommate directed at defendant; (b) the victim's history of narcotics dealing out of his basement apartment at Gaskin's home; (c) the recovery by crime scene police of a .25 caliber handgun and a pound of marijuana in the victim's apartment; and (d) the fact that a knife was found on the victim at the time of his death; (4) it was reversible error for the trial court to submit the count of depraved indifference murder to the jury, where no reasonable view of the evidence could support the theory that the shooting of the victim at point blank range was reckless; (5) the evidence presented at trial did not establish Gaskin's guilt beyond a reasonable doubt, and the verdict was against the weight of the evidence; and (6) the maximum sentence of twenty-five years to life imprisonment was unduly harsh and excessive. *See* Brief of Appellant, *People v. Gaskin*, 802 N.Y.S.2d 751 (App. Div. 2005). In June 2004,

Gaskin moved for permission to file a *pro se* supplemental brief. This motion was granted, but, in February 2005, petitioner withdrew his application and returned the trial transcripts to the court. On October 31, 2005, the Appellate Division ruled that Gaskin's argument that the evidence was legally insufficient to establish his guilt beyond a reasonable doubt was not preserved for appellate review and, in the alternative, the verdict of guilt was not against the weight of the evidence. *People v. Gaskin*, 802 N.Y.S.2d 751, 752 (App. Div. 2005). The Appellate Division also held that the sentence imposed was not excessive, and that the remaining issues raised by Gaskin on appeal were without merit. *Id.*

Gaskin sought leave to appeal to the New York Court of Appeals on the grounds that the evidence was not legally sufficient to sustain his conviction for reckless second-degree murder and that the lesser-included offense of manslaughter in the second degree should have been charged to the jury. On February 20, 2006, the Court of Appeals denied leave to appeal. *People v. Gaskin*, 845 N.E.2d 1283, 1283 (N.Y. 2006). Petitioner did not seek review by the United States Supreme Court.

On March 2, 2007, petitioner filed a *pro se* motion to vacate his judgment of conviction, pursuant to Criminal Procedure Law § 440.10, on the following grounds: (1) there was insufficient evidence to prove the "circumstances evincing a depraved indifference to human life" element of reckless murder; (2) he was not convicted of all the elements of the crime because the "circumstances" element of depraved indifference murder was not proven at trial; and (3) as a result of the state's failure to prove the "circumstances" element of the crime, the New York depraved indifference murder statute was vague as applied to him. On July 23, 2007, the Supreme Court, Suffolk County

denied the motion, holding that the Appellate Division had already decided that the evidence was legally sufficient to support the reckless murder conviction, and that there was no retroactive effect to the law cited by Gaskin in his motion. Petitioner moved for leave to appeal the court's decision to the Appellate Division and filed a separate motion to reargue his motion before the Supreme Court, Suffolk County. The Appellate Division denied leave to appeal on October 29, 2007, and the Supreme Court denied the motion to reargue on November 13, 2007. On December 7, 2007, petitioner sought leave to appeal both decisions to the Court of Appeals. On January 7, 2008, both applications were dismissed by the Court of Appeals because the orders that Gaskin sought to appeal were not appealable under New York Criminal Procedure Law section 450.90(1).

Also on December 7, 2007, petitioner filed a writ of error coram nobis, claiming ineffective assistance of appellate counsel. Petitioner argued that appellate counsel was ineffective because: (1) he failed to argue that the trial court improperly refused to respond to a jury note regarding the distinction between depraved indifference murder and intentional murder, and (2) he failed to argue for the dismissal of the depraved indifference murder charge on the grounds that there was a lack of evidence to prove recklessness. Petitioner later submitted a supplemental petition, arguing that appellate counsel was ineffective because (3) he failed to argue that "depraved indifference" to human life is an element of "second-degree reckless"[3] murder. The Appellate Division denied the writ of error coram nobis on March 11, 2008, and the Court of Appeals denied leave to appeal on May 28, 2008.

---

[3] The Court presumes that petitioner's arguments relating to "second-degree reckless" murder refer to depraved indifference murder.

## C. The Instant Petition

On March 13, 2008, petitioner filed a petition for a writ of habeas corpus before this Court. This Court issued an Order to Show Cause on March 19, 2008. A response in opposition was filed on April 23, 2008.

On May 13, 2008, Gaskin filed a motion to stay the proceedings so he could return to state court and exhaust his remaining unexhausted claims. In addition, Gaskin requested that the Court grant him leave to amend his original petition to include the claims that he filed in his writ of error coram nobis. The Court granted Gaskin's motion to stay on June 4, 2008.

While this petition was being held in abeyance, petitioner filed a second petition for a writ of error coram nobis with the Appellate Division on August 7, 2008. In the petition for a writ of error coram nobis, Gaskin argued ineffective assistance of appellate counsel due to appellate counsel's failure to: (1) cite federal decisional authority for each issue raised in the direct appeal; (2) seek leave to appeal to the New York Court of Appeals on all of the issues argued in the Appellate Division brief; and (3) argue that trial counsel was ineffective for not objecting to the procedure used to swear in the jury panel at the beginning of the trial. The Appellate Division denied Gaskin's petition on September 30, 2008, and the Court of Appeals denied leave to appeal on January 23, 2009.

Thereafter, Gaskin returned to federal court and filed an amended petition for a writ of habeas corpus on February 12, 2009. Petitioner's amended petition raised the following claims: (1) under the New York depraved indifference murder statute, (a) the evidence was insufficient at trial to establish the "circumstances evincing a depraved indifference to human life" element of reckless murder, of which petitioner was convicted at trial; and (b) the criminal statute was "vague as applied to petitioner"; and (2) petitioner's appellate counsel provided ineffective assistance when he (a) failed to argue that the trial court improperly refused to respond to a jury note regarding the distinction between depraved indifference murder and intentional murder; (b) failed to argue for the dismissal of the depraved indifference murder charge on the ground that there was a lack of evidence to prove recklessness and failure to argue that "depraved indifference" to human life is the mens rea element of second-degree reckless murder[4]; (c) failed to "federalize" and exhaust all of petitioner's claims on appeal; and (d) failed to argue ineffective assistance of trial counsel for trial counsel's failure to object to the procedure used by the trial court to administer the jury oath at trial.

Respondent filed opposition papers on May 22, 2009. On June 12, 2009, petitioner filed a motion for summary judgment, arguing that there were no genuine issues as to material facts, and that petitioner was thereby entitled to summary judgment on his claims. Respondent filed opposition papers to the motion for summary judgment on July 9, 2009. Petitioner filed a reply on July 30, 2009. On December 22, 2009, petitioner filed a "Complaint to Declare that Prior to 1983, the Legislative Intent on One of the Elements of Penal Law 125.25(2) (Depraved Indifference) Was To Be Construed as a Mens Rea Element." This submission reiterates and supplements petitioner's arguments regarding the depraved indifference statute. This matter is fully

---

[4] The Court has combined petitioner's second and third ineffective assistance of counsel claims in his amended petition, both of which relate to petitioner's conviction under the depraved indifference murder statute in New York and has also combined petitioner's claims regarding exhaustion of claims on appeal.

submitted.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

### A. Depraved Indifference Murder Statute

Petitioner makes two claims regarding New York Penal Law § 125.25(2) [Depraved Indifference Murder]. Petitioner claims that he was deprived of a fair trial and due process because there was insufficient evidence to

prove his guilt beyond a reasonable doubt of reckless or depraved indifference murder. Specifically, petitioner contends that the evidence at trial was insufficient to support a finding of depraved indifference, because the prosecution did not establish the mens rea "circumstances evincing a depraved indifference to human life" element of depraved indifference murder. Petitioner further argues that his conviction resulted in the depraved indifference murder criminal statute being "vague as applied to" him.

### 1. Legal Insufficiency Claim

The law governing habeas relief from a state conviction based on insufficiency of evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997). As such, a "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vassell v. McGinnis*, No. 04-CV-0856 (JG), 2004 WL 3088666, at *5 (E.D.N.Y. Dec. 22, 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007) ("'[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a

reasonable doubt.'" (quoting *Jackson*, 443 U.S. at 324)). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

A habeas petitioner cannot prevail on a claim of legally insufficient evidence, unless he can show that viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

New York depraved indifference murder law is defined as follows: "Under circumstances evincing a depraved indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a

reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto." N.Y. Penal Law § 15.05(3).[5]

"[I]t has never been permissible in New York for a jury to convict a defendant of depraved indifference murder 'where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim.'" *Policano v. Herbert*, 507 F.3d 111, 114-115 (2d Cir. 2007) (quoting *Policano v. Herbert*, 859 N.E.2d 484, 492-96 (N.Y. 2006) (explaining issues certified by the Second Circuit)).

Petitioner argues that the evidence at trial could not sustain a conviction for depraved indifference murder because there were no circumstances surrounding the murder that evidenced a "depraved indifference" by petitioner. In support of his argument, petitioner relies on cases decided after his trial in 2002, which led to and were the result of the fundamental shift in New York's homicide jurisprudence in which defendants involved in one-on-one confrontations with victims could not be convicted of depraved indifference murder except in unusual circumstances. *See People v. Suarez*, 844 N.E.2d 721, 728 (N.Y. 2005); *People v. Feingold*, 852 N.E.2d 1163

(N.Y. 2006). The evolution of New York law with respect to the depraved indifference statute is discussed in detail in *Rustici v. Philips*, 497 F. Supp. 2d 452, 483 (E.D.N.Y. 2007) and *Guzman v. Greene*, 425 F. Supp. 2d 298, 313 (E.D.N.Y. 2006), but a brief summary of the developments under New York law in connection with this statute is warranted.

a. New York's Depraved Indifference Statute

At the time of petitioner's trial in 2002, the law as stated in *People v. Register* and *People v. Sanchez* was controlling. *See Rustici*, 497 F. Supp. 2d at 483. Recklessness was the required mental state for depraved indifference murder and the depravity and indifference was assessed objectively based on a review of the circumstances of the crime. *See People v. Register*, 457 N.E.2d 704, 705-09 (N.Y. 1983) (upholding conviction for depraved indifference murder where defendant entered a crowded bar with a pistol, drank for several hours stating that he was "'going to kill somebody tonight,' or similar words," then later shot at close range a person who had been arguing with his friend, shot a second person by mistake, and shot a third person for no explained reason), *overruled by People v. Feingold*, 852 N.E.2d 1163 (N.Y. 2006); *see also People v. Sanchez*, 777 N.E.2d 204, 206-07, 211-12 (N.Y. 2002) (upholding conviction for depraved indifference murder when defendant fired a gun pointed at the victim's chest from a distance of twelve to eighteen inches and then fled), *overruled by People v. Feingold*.

During the time of the *Register/Sanchez* line of cases, the New York Court of Appeals held that it was not inappropriate for the trial court to let the jury decide whether defendants should be convicted of intentional or depraved indifference murder. *Sanchez*, 777 N.E.2d at 210-11 (asking "whether, on this record, based on an objective assessment of the risk

---

[5] As one court has noted, when these statutes are read in conjunction with each other, "[t]he statutory standard for recklessness is higher for depraved indifference murder than for other reckless crimes. The depraved indifference murder statute requires that the risk created by a defendant's conduct be 'grave,' in addition to being substantial and unjustifiable." *Flowers v. Fisher*, No. 03 CV 5405 (NG) (VVP), 2006 WL 3050876, at *12 n.4 (E.D.N.Y. Oct. 23, 2006) (citations omitted), *aff'd*, 296 F. App'x 208, 210 (2d Cir. 2008) (summary order).

defendant recklessly created and disregarded, the likelihood of causing death from defendant's conduct was so obviously severe that it evinced a depraved indifference to human life"). The Court of Appeals reasoned that "purposeful homicide itself is the ultimate manifestation of indifference to the value of human life," and that the jury could "reasonably have concluded that defendant's conduct was either reckless and depraved, or intentional." *Id.* at 206 (noting that "the jury may also have taken into account the preexisting good relations between defendant and [the victim], and concluded that this was an instantaneous, impulsive shooting – perhaps to disable or frighten [the victim], rather than to kill him").

The Second Circuit has similarly found these cases during this time to stand for the proposition that "the evidence may be sufficient to support a conviction for depraved indifference murder if the jury could rationally infer that the defendant did not act with intent to kill the victim even if it might, on the same facts, properly conclude that the murder was intentional." *Policano v. Herbert*, 430 F.3d 82, 91 (2d Cir. 2005).

However, there have been significant developments in New York regarding the law of depraved indifference murder and the legal sufficiency of evidence supporting such a claim since *Register* and *Sanchez*. *See Rustici v. Philips*, 497 F. Supp. 2d 452, 484-86 (E.D.N.Y. 2007) (discussing developments in New York law regarding the depraved indifference statute and sufficiency of evidence); *see also Guzman v. Greene*, 425 F. Supp. 2d 298, 307-13 (E.D.N.Y. 2006) (same). In *Register*, the court held that recklessness is the mens rea for depraved indifference murder. *Register*, 457 N.E.2d at 707. Beginning in 2003, however, several cases began restricting the circumstances under which a defendant could be found guilty of depraved indifference murder. *See, e.g.*, *People v. Suarez*, 844

N.E.2d 721 (N.Y. 2005); *People v. Gonzalez*, 807 N.E.2d 273 (N.Y. 2004); *People v. Payne*, 819 N.E.2d 634 (N.Y. 2004); *People v. Hafeez*,792 N.E.2d 1060 (N.Y. 2003). Specifically, in *Suarez*, the Court of Appeals stated:

> [S]omeone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. . . . Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder – a result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent" – depravedly or otherwise – to the fate of that person, we underscore what we said in *Payne*: *"a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."*

844 N.E.2d at 728 (emphasis added).

Moreover, in 2006, the New York Court of Appeals in *People v. Feingold*, 852 N.E.2d 1163 (N.Y. 2006), re-examined its depraved indifference jurisprudence and explicitly overruled *Sanchez* and *Register*. In doing so, the Court of Appeals held that depraved indifference is a culpable mental state. *Feingold*, 852 N.E.2d at 1167. Specifically, the Court of Appeals explained:

We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state. Our dissenting colleagues contend that this final step in the overruling of *Register* is unwarranted and unnecessary. Perhaps we would agree with that were it not for the setting in which the present case comes to us. In earlier cases (*Hafeez, Gonzalez, Payne, Suarez*), we reversed depraved indifference murder convictions without having to discuss explicitly the question of mens rea. It was enough to say – and we said it repeatedly – that those defendants did not commit depraved indifference murder because depravity or indifference was lacking. . . . Beginning with *Hafeez*, the *Register/Sanchez* rationale was progressively weakened so that it would no longer support most depraved indifference murder convictions, particularly one-on-one shootings or stabbings. . . . In *Suarez*, it was not necessary for us to state explictly whether depraved indifference is a mental state (mens rea). In the case before us, however, the trial judge rendered his verdict in a way that requires us to address directly the question of mens rea.

*Id.* Applying this mens rea requirement, the *Feingold* court held that the conviction could not stand because the factfinder determined that the defendant did not act with depraved indifference. *Id.* at 1167-68.

Thus, as the New York Court of Appeals explained in a subsequent decision in 2006, the interpretation of this element – namely, "under circumstances evincing a depraved indifference to human life" – of the depraved indifference murder statute "gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea, beginning with our decision in *Hafeez* in 2003, continuing in our decisions in *Gonzalez, Payne* and *Suarez* in 2004 and 2005, and ending with our decision in *Feingold* in 2006." *Policano*, 859 N.E.2d at 494-95.

   b.  Application of New York's Depraved
       Indifference Statute to the Instant Case

With respect to petitioner's challenge in the instant case to the sufficiency of the evidence supporting the conviction for depraved indifference murder, this Court must look to New York law as it existed at the time petitioner's conviction became final.  *See Flowers*, 296 F. App'x at 210 ("We look to New York law as it existed at the time [petitioner's] conviction became final, as the New York Court of Appeals has found that although the law on depraved indifference has changed significantly in recent years, those changes do not apply retroactively." (citing *Policano*, 859 N.E.2d at 495)); *see also Henry v. Ricks*, 578 F.3d 134, 141 (2d Cir. 2009) (Due Process Clause does not require retroactive application of new case law in New York regarding interpretation of depraved indifference statute). A petitioner's conviction becomes final 90 days after the New York Court of Appeals denies leave to appeal – that is, after the period during which a litigant can petition the United States Supreme Court for a writ of certiorari ends. *See Fernandez v. Artuz*, 402 F.3d 111, 112 (2d Cir. 2005). In the instant case, petitioner's conviction became final in 2006 and, thus, the sufficiency of the evidence

must be examined by New York law at that time—as outlined by the New York Court of Appeals in *Suarez* as summarized in *Policano*.

After a careful review of the record, this Court concludes that a rational factfinder, viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in the prosecution's favor, could have found the elements of depraved indifference murder satisfied beyond a reasonable doubt. Specifically, in the instant case, petitioner's counsel argued at his trial that petitioner did not *intend* to kill Tony Darnell Jones because petitioner would never want to do anything that hurt his girlfriend, Sharline Clarkston. (Tr. 807.) Petitioner's trial counsel argued that the shooting was accidental, negligent, and unexpected, not intentional. (Tr. 51-52.) However, petitioner did not contest at trial that it was his gun with which Jones was shot, and that he was holding the gun at the time. Prior to Jones's shooting, there was testimony that petitioner told Jones that he would have "blazed" or "did" Jones a long time ago if he were not Clarkston's nephew. (Tr. 117, 265.) Petitioner had taken his gun out during the heated altercation he had with Jones outside his house. (Tr. 814-16.) In light of this evidence, it is conceivable that the jury could have found that although petitioner did not intend to kill Jones, his actions—by taking out his gun during a heated altercation with his girlfriend's nephew, after the nephew was encouraging petitioner to fight him, with several bystanders nearby—manifested the requisite circumstances for the jury to find petitioner guilty of depraved indifference murder.

Given the particular circumstances of this case, even under New York law in 2006 when petitioner's conviction became final, there was sufficient evidence to support a conviction for a depraved indifference murder. In other words, this is not a situation where the only conclusion reasonably supported by the trial is

that the defendant intended to kill the victim. Instead, where the petitioner's counsel argued at the trial that Gaskin did not intend to kill the victim, a jury could rationally conclude that the Gaskin acted not with an intent to cause death, but rather "recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person." N.Y. Penal Law §125.25(2).

This Court's conclusion that such factual circumstances are sufficient under New York law in 2006 (and currently) to support a depraved indifference conviction is supported by recent New York State cases that have reached the same conclusion under similar circumstances. For example, in *People v. Casiano*, 837 N.Y.S.2d 76, 77 (App. Div. 2007), defendant, while robbing a livery cab driver, pointed the gun at the driver and told the driver that she would shoot if he did not hand over the money. After the driver responded that the money was in the trunk, defendant warned him that she would shoot if he opened the door. *Id.* When the driver ignored that warning, defendant shot once, killing the driver. *Id.* The defendant argued on appeal that the jury's conviction for depraved indifference murder was insufficient. However, the Appellate Division, First Department, in addition to finding that the legal sufficiency argument was unpreserved, rejected the argument on the merits because "the jury could have reasonably concluded, particularly if it credited portions of defendant's statement, that she lacked homicidal intent but acted under circumstances evincing a depraved indifference to human life." *Id.*; *see also People v. Patterson*, 834 N.Y.S.2d 18, 18 (App. Div. 2007) ("The evidence, including defendant's own trial testimony that he fired his weapon while looking away from the victim, supported the jury's finding that defendant recklessly engaged in conduct creating a grave risk of death to another person, under circumstances evincing depraved indifference to human life,

rather than with specific intent to kill the victim."); *People v. McMillon,* 816 N.Y.S.2d 167, 170 (App. Div. 2006) (concluding that jury could reasonably find a killing was reckless where defendant told police that, although he shot the victim once in the chest from a distance of at least five feet, "he did not mean to kill or hurt anyone, that he had felt threatened and believed the victim was armed, that he intended only to scare the victim, and that his weapon had just gone off"); *People v. Suphal,* 830 N.Y.S.2d 474, 477, 478 (Sup. Ct. 2006) (where defendant testified that he shot at the victim with a gun defendant recovered from the victim because defendant believed the victim had a second gun, the court concluded, even after *Payne,* that "this is the rare case where a one on one murder could be found to qualify as a depraved indifference murder" because "there was a reasonable view of the evidence, based upon defendant's own testimony, upon which the jury could find that the defendant did not intend to hit or kill the decedent, but was merely trying to scare him off, albeit in an extremely reckless and depraved manner"); *see generally Maggiore v. United States,* 302 F. App'x 17, 20 (2d Cir. 2008) ("But Maggiore has consistently denied any intent to murder, admitting only a reckless disregard for the serious risk to human life created by his actions. On this record, there is a factual basis to conclude that defendant acted under circumstances evincing a depraved indifference to human life, and his former counsel cannot be deemed to have rendered objectively unreasonable representation in failing to raise a sufficiency challenge to the guilty plea."); *People v. Castellano,* 837 N.Y.S.2d 643, 643 (App. Div. 2007) ("[D]efendant testified that, while intoxicated, he swung a knife wildly in an effort to free himself from the decedent and another person. Given defendant's testimony, we reject his contention that the evidence could only support a finding of intent. Under the evidence presented, the jury could have reasonably credited portions of defendant's testimony that supported a finding of reckless rather than intentional conduct, while at the same time rejecting his justification defense.").

Several cases in which the court found that a defendant's action did not meet the requirements of depraved indifference murder—*Hafeez, Gonzalez, and Payne*—involved factual circumstances that are distinguishable from the instant case.

In *People v. Hafeez,* the defendant was convicted of depraved indifference murder for aiding and abetting his co-defendant's revenge killing, where the co-defendant lured the victim into a bar and stabbed the victim in the chest. The Appellate Division reversed the conviction for depraved indifference murder, and the New York Court of Appeals affirmed such a reversal. In doing so, the Court of Appeals held:

> The trial evidence concerning codefendant's conduct was consistent with intentional murder as opposed to depraved indifference murder. Here, codefendant plotted his revenge for months in advance and effectuated his plan on the night of the stabbing by a scheme intended to place the victim in a position where he would be vulnerable to attack. Codefendant concealed a knife in his sleeve poised to slip into his hand. The plan culminated in a single deliberate wound to the chest that perforated the victim's heart. It was a quintessentially intentional attack directed solely at the victim.

*Hafeez,* 792 N.E.2d at 1063 (internal citation omitted). The Court of Appeals concluded that defendant's acts were not "imminently

dangerous and [did not] present[] a very high risk of death to others." *Id.* The court contrasted the circumstances in *Hafeez* with *Sanchez*, finding that the defendant in *Sanchez* presented a heightened risk of unintended injury by firing in an area where children were playing. *Id.* The court concluded that "there exist[ed] no valid line of reasoning that could support a jury's conclusion that defendant possessed the mental culpability required for depraved indifference murder." *Id.* In the instant petition, unlike the defendant in *Hafeez*, no evidence at trial indicated that petitioner plotted Jones's murder in advance of the altercation in the driveway. The jury could reasonably have found that, if the gun went off accidentally as petitioner's counsel asserted, petitioner did not direct his attack solely at the victim. The jury could have concluded that by pulling out a gun in the middle of a heated altercation with Jones, with several bystanders watching, petitioner's behavior was imminently dangerous and presented a high risk of death to others.

Similar to in *Hafeez*, in *People v. Gonzales*, the New York Court of Appeals agreed with the Appellate Division's conclusion that "defendant was guilty of an intentional shooting or no other." 807 N.E.2d 273, 275 (N.Y. 2004). The evidence at trial showed that defendant "shot the victim once in the chest, once in the face from 6 to 18 inches away, six times in the back of the head from approximately six inches away, and twice in the back." *Id.* The Court of Appeals concluded that "[t]he only reasonable view of the evidence here was that defendant intentionally killed the victim by aiming a gun directly at him and shooting him 10 times at close range, even after he had fallen to the ground." *Id.* In defining depraved indifference murder, the court stated that "it involves a killing in which the defendant does not have a conscious objective to cause death but instead is recklessly indifferent, depravedly so, to whether death occurs. When defendant shot

his victim at close range, he was not recklessly creating a grave risk of death, but was creating a virtual certainty of death born of an intent to kill." *Id.* at 276. By contrast, in the instant case, Jones was shot only once. Assuming that petitioner did not intend to kill Jones, as his counsel argued at trial, the one gunshot from petitioner's gun during petitioner's and Jones's verbal exchange lacked a "virtual certainty of death born of an intent to kill."

Finally, in *People v. Payne*, the defendant, angry after a phone confrontation with the victim, loaded a 12-gauge shotgun, went to the victim's home and shot him at point-blank range, killing him. 819 N.E.2d 634, 634-35 (N.Y. 2004). The Court of Appeals, in reversing defendant's conviction for depraved indifference murder, analogized this case to *Gonzales*, concluding that "the evidence established defendant's intent to kill" rather than "[i]ndifference to the victim's life." *Id.* at 635. As discussed *supra*, the circumstances surrounding the shooting of Jones lacked similar strong evidence of an intent to kill.

These cases demonstrate that the New York Court of Appeals began limiting those circumstances under which a defendant could be charged with depraved indifference murder – specifically with respect to individual, one-on-one shootings or knifings. The Court recognizes that the instant case is not factually identical to the categories of depraved indifference situations discussed in *Gonzales* (and emphasized in *Payne*). *See Gonzales*, 807 N.E.2d at 275-76 ("Depraved indifference murder is exemplified by a defendant – unconcerned with the consequences – who fires into a crowd; drives an automobile down a crowded sidewalk at high speed; shoots a partially loaded gun at a person's chest during a game of Russian roulette; abandons a helplessly intoxicated person on a snowy highway at night; or repeatedly beats a young child over a period of several days.") (internal citations omitted); *see also Payne*, 819 N.E.2d

at 637 ("Instances [of depraved indifference murder] include where, without the intent to kill, the defendant inflicted a continuous beating on a three-year-old child, fractured the skull of a seven-week-old baby, repeatedly beat a nine year old or robbed an intoxicated victim and forced him out of a car on the side of a dark, remote, snowy road partially dressed and without shoes in subfreezing temperatures." (internal citations omitted)).

However, the evidence against petitioner in the instant case is clearly distinguishable from these cases where the Court of Appeals reversed convictions as part of New York's new depraved indifference rule because the court held that the "*only* reasonable view of the evidence here was that defendant intentionally killed the victim." *People v. Gonzalez*, 807 N.E.2d at 275 (emphasis added); *see also People v. Payne*, 819 N.E.2d 634 (N.Y. 2004); *People v. Hafeez*, 792 N.E.2d 1060 (N.Y. 2003). In the instant case, petitioner's evidence fits into the narrow category of cases where depraved indifference murder properly applies and, thus, petitioner's conviction would also be sustained under current law. As noted *supra*, petitioner's counsel argued at trial that petitioner did not intend to kill Jones, but rather that the gun had gone off accidentally. Petitioner's counsel argued that petitioner's lack of intent to kill Jones was further evidenced by petitioner's behavior when he realized that Jones had been shot: petitioner immediately ran in the house and obtained a pillow, which he placed under Jones's head. Nonetheless, petitioner did take out his gun during a heated altercation with Jones, during which Jones made incendiary statements directed at petitioner and expressed a desire to fight petitioner. Thus, in determining petitioner's state of mind, although there was certainly reason to believe the petitioner deliberately shot decedent, there was also considerable evidence to lead the jury to rationally believe that petitioner acted spontaneously and without intent, but still

acted recklessly and with depravity. Such circumstances distinguish the instant situation from *Gonzalez, Hafeez,* and *Payne*. *See, e.g., Suphal,* 830 N.Y.S.2d at 475-77 (distinguishing *Payne* where defendant testified that he did not intend to kill victim and acted in self-defense in firing multiple shots). Viewing the issue in the light most favorable to the prosecution, the evidence at trial was legally sufficient to establish guilt of depraved indifference murder beyond a reasonable doubt even under *Suarez*, as summarized in *Policano* (and under current law). A rational jury could reasonably conclude that the petitioner's act, even if not intentional, evinced a depraved indifference to human life.

In sum, although the Court recognizes that the law regarding depraved indifference has evolved since petitioner's trial in 2002, the Court concludes that the evidence in this particular case was sufficient to sustain petitioner's conviction for depraved indifference under New York law at the time petitioner's conviction became final (and under current law). Therefore, the Court finds this is a remaining "rare case" under New York law where a one-on-one shooting could support a depraved indifference conviction.

## 2. Unconstitutional Vagueness

Petitioner also contends that the depraved indifference murder statute is unconstitutionally vague as applied to him. Specifically, petitioner argues that, under New York State case law, the meaning and definition of depraved indifference murder is indistinguishable from reckless manslaughter. As set forth below, the Court finds this argument to be without merit.

Under the vagueness doctrine, "the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the

defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997); *accord United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999); *see Rogers v. Tennessee*, 532 U.S. 451, 459 (2001) (holding that right to fair warning "bear[s] on the constitutionality of attaching criminal penalties to what previously had been innocent conduct"); *Marks v. United States*, 430 U.S. 188, 191 (1977) ("[P]ersons have a right to fair warning of that conduct which will give rise to criminal penalties."). Due process requires that a criminal statute "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir. 1993). Where a statute does not regulate First Amendment interests, the "statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988); *accord Whittaker*, 999 F.2d at 42. Courts use a two-part test to determine whether a statute is unconstitutionally vague as applied: "a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it." *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) (internal quotations, citations, and alteration omitted). "Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *Id.*

As discussed above, the New York depraved indifference murder statute provides that a person is guilty when "[u]nder the circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). In contrast, a person is guilty of second degree manslaughter when he "recklessly causes the death of another person." N.Y. Penal Law § 125.15(2). Recklessness occurs when a person "is aware of and consciously disregards a substantial and unjustifiable risk" and the risk "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." N.Y. Penal Law § 15.03(3).

The New York Court of Appeals has explicitly rejected void-for-vagueness challenges to the depraved indifference statute. *See People v. Johnson*, 662 N.E.2d 1066 (N.Y. 1996); *People v. Cole*, 652 N.E.2d 912, 913 (N.Y. 1995); *People v. Poplis*, 281 N.E.2d 167, 168 (N.Y. 1972); *see also People v. Brown*, 804 N.Y.S.2d 209 (App. Div. 2005); *People v. Joyner*, 755 N.Y.S.2d 866 (App. Div. 2003). In addition, almost all federal courts in this circuit have similarly upheld the constitutionality of New York's depraved indifference statute in rejecting claims of vagueness.[6] *See, e.g., Farr v. Greiner*, No. 01 Civ. 6921 (NG) (MDG), 2007 WL 1094160, at *26 (E.D.N.Y. Apr. 10, 2007) (collecting cases); *see also Guzman*, 425 F. Supp. 2d at 320; *Salcedo v. Phillips*, No. 04 Civ. 7964, 2005 WL 2211318, at *31 n.9 (PAC) (GWG)

---

[6] Only one district judge has held that the New York depraved indifference statute is unconstitutional. *See St. Helen v. Senkowski*, No. 02 Civ. 10248, 2003 U.S. Dist. LEXIS 26642, at *9-*10 (S.D.N.Y. Sept. 19, 2003), *rev'd on other grounds*, 374 F.3d 181 (2d Cir. 2004); *Jones v. Keane*, No. 02 Civ. 01804 (CLB), 2002 WL 33985141, at *5 (S.D.N.Y. May 22, 2002), *rev'd on other grounds*, 329 F.3d 290 (2d Cir. 2003); *see also Rustici*, 497 F. Supp. 2d at 481 (collecting and discussing cases). Although the issue was recently before the Second Circuit in *Rustici v. Phillips*, No. 07-3789-pr, 2009 WL 159262, at *2 (2d Cir. Jan. 23, 2009), the Second Circuit did not reach the issue because it found that the vagueness claim was technically exhausted but procedurally barred.

(S.D.N.Y. Sept. 13, 2005); *Mannix v. Philips*, 390 F. Supp. 2d 280, 290-92 (S.D.N.Y. 2005); *Summerville v. Conway*, No. 07 Civ. 4830 (BMC) (RML), 2008 WL 3165860, at *10 (E.D.N.Y. Aug. 6, 2008). This Court agrees with the analysis by the overwhelming majority of federal courts that have held that the depraved indifference murder statute gives the accused fair warning that his conduct was "criminal" and "proscribed" since ordinary people would understand that shooting at someone at short range in the vicinity of others would be criminal and put them at risk of a homicide conviction. *See Mannix*, 390 F. Supp. 2d at 291-92; *Salcedo*, 2005 WL 2211318, at *28 & n.8. Moreover, New York courts have applied the depraved indifference murder statute to conduct similar to that of petitioner's. *See, e.g.*, *People v. Fenner*, 463 N.E.2d 617, 618 (N.Y. 1984) (finding evidence sufficient for depraved indifference murder where defendant shot at two of the four people with whom he had been fighting while they attempted to run away from defendant); *People v. Lopez*, 602 N.Y.S.2d 872, 872 (App. Div. 1993) (finding evidence that defendant shot victim after a fight and attempt by victim's friend to appease defendant established depraved indifference to human life). Thus, based on the statutory language and case law that existed at the time the crime was committed, petitioner was on notice that his conduct was proscribed by the depraved indifference murder statute.

The second prong of the vagueness analysis concerns whether the statute provides sufficient guidelines to the police, prosecutors, judges, and juries to prevent arbitrary and discriminatory enforcement. *Kolender*, 461 U.S. at 357-58. "[S]ome ambiguity in a statute's meaning is constitutionally tolerable." *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999). Here, as discussed above, virtually all courts in this Circuit have upheld the constitutionality of the statute. The language of the statute, regarding both "recklessness" and "conduct which creates a grave risk of death," has been found to be sufficient to prevent arbitrary and discriminatory enforcement. This Court agrees with that analysis.

Furthermore, the jury instructions administered in this case gave the jury sufficient guidelines to prevent arbitrary or discriminatory application of the statute. The judge further defined depraved indifference murder in response to a jury question during its deliberations, regarding the distinction between depraved indifference murder and intentional murder. (Tr. 943, 950-55.) Based on the statutory language and case law that existed at the time the crime was committed, petitioner was on notice that his conduct was proscribed by the depraved indifference murder statute. Finally, "[e]ven if petitioner were correct that there is no discernible distinction between depraved indifference murder and the lesser included offense of reckless manslaughter, there is no constitutional violation entitling him to habeas relief." *Farr*, 2007 WL 1094160, at *29 (citations omitted). In *Farr*, when reviewing the constitutionality of the depraved indifference murder statute, the court cited:

> In reversing the Seventh Circuit decision vacating the sentence of a defendant who was convicted under a federal gun possession statute because another statute had identical elements but provided for a lesser sentence, the Supreme Court held in *United States v. Batchelder*, 442 U.S. 114 (1979) that "due process requirements were satisfied since each statute provided adequate notice. Even where two separate statutes cover identical conduct, there is no constitutional impediment to

the prosecution exercising its discretion to choose which statute to charge and prosecute absent selective enforcement.

*Id.*

Thus, this Court, consistent with the weight of the federal and state cases that have previously addressed the question, finds that New York's depraved indifference murder statute is not unconstitutionally vague and does not allow for unlimited or arbitrary discretion in its application. Accordingly, petitioner's vagueness claim is without merit.

## B. Ineffective Assistance of Appellate Counsel

Petitioner raises several grounds relating to the ineffective assistance of appellate counsel. Gaskin argues that his appellate counsel was ineffective in several different ways: (1) he failed to argue that the trial court improperly refused to respond to a jury note regarding the distinction between depraved indifference murder and intentional murder; (2) he failed to argue that trial counsel was ineffective for not arguing for the dismissal of the depraved indifference murder charge on the ground that there was a lack of evidence to prove depraved indifference and he failed to argue that "depraved indifference" to human life is the mens rea element of depraved indifference murder; (3) he failed to "federalize" and exhaust each of petitioner's claims on direct appeal; and (4) he failed to raise ineffective assistance of trial counsel for trial counsel's failure to object to the court not swearing in prospective jurors in accordance with New York Criminal Procedure Law § 270.15(1)(a). The Court first sets forth the standard for reviewing claims of ineffective assistance of appellate counsel and then addresses each of these claims in turn. As discussed below, the Court finds that each of petitioner's claims is without merit.

### 1. Standard

A criminal defendant has the right to the effective assistance of counsel on the direct appeal of his conviction. *See Evitts v. Lucey*, 469 U.S. 387, 395-96 (1985). In determining whether appellate counsel has rendered constitutionally effective assistance, courts will apply the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984), for analyzing such claims as to trial counsel. *See, e.g.*, *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under the *Strickland* standard, a petitioner alleging ineffective assistance of appellate counsel must prove both (1) deficient performance—that appellate counsel's performance was objectively unreasonable, and (2) prejudice—that, absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful. *See Mayo*, 13 F.3d at 533-34; *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). Generally, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983)); *see also Strickland*, 466 U.S at 690-91 (noting that appellate counsel's strategic choices with regard to which claims to bring on appeal are "virtually unchallengeable"). As the Supreme Court has noted, "[t]his process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail,

far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751-52); *accord Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir. 2001). Thus, reviewing courts should not "second-guess" the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *Jones*, 463 U.S. 754; *accord Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998). Instead, as the Second Circuit has observed:

> [T]he district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Mayo*, 13 F.3d at 533 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985))

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

This Court proceeds to examine each prong in turn, keeping in mind that a habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy either element.

The Court finds that counsel's decision to omit a claim of ineffective assistance of trial counsel on appeal did not fall "outside the wide range of professionally competent assistance" and, therefore, cannot form the basis of a claim for ineffective appellate counsel under the Sixth Amendment. *Mayo*, 13 F.3d at 533. Moreover, petitioner cannot show under the standard set forth in *Strickland*, that appellate counsel's failure to raise the ineffective assistance of trial counsel claim was objectively unreasonable or that, if raised, there was a reasonable probability that his appeal would have been successful. For the reasons set forth below, this Court finds that petitioner's claim as to appellate counsel's ineffectiveness is without merit, and, thus, that the state court did not unreasonably apply federal law in rejecting petitioner's claim.

## 2. Analysis

### a. Deficient Performance Inquiry

As a threshold matter, the Court notes that each of petitioner's ineffective assistance of appellate counsel arguments was rejected by the Appellate Division in petitioner's first and second writs of error coram nobis. In its opinions denying both writs, the Appellate Division, citing *Jones v. Barnes*, 463 U.S. 745 (1983) and *People v. Stultz*, 2 N.Y.3d 277 (N.Y. 2004), found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v.*

*Gaskin*, 852 N.Y.S.2d 798 (App. Div. 2008); *People v. Gaskin*, 863 N.Y.S.2d 925 (App. Div. 2008). Thus, petitioner's claims are properly exhausted, but are without merit for the reasons discussed below.

The brief submitted by petitioner's appellate counsel to the Appellate Division was a well-reasoned, thirty-eight page brief that stressed six points that appellate counsel deemed the best grounds for appeal. Appellate counsel included appropriate references to the record and extensive citations to applicable case law. Appellate counsel also timely applied for leave to appeal to the Court of Appeals when the judgment was affirmed by the Appellate Division. In applying for leave to appeal, appellate counsel picked the two arguments that he deemed strongest for review by the Court of Appeals. Nonetheless, petitioner argues that appellate counsel rendered ineffective assistance when he: (1) failed to argue that it was inappropriate for the trial court to refuse to respond to a jury note regarding the distinction between depraved indifference murder and intentional murder; (2) failed to argue that trial counsel was ineffective for not arguing for the dismissal of the depraved indifference murder charge on the grounds that there was a lack of evidence to prove recklessness and that "depraved indifference" to human life is the mens rea element of second-degree reckless murder; (3) failed to "federalize" and exhaust each of petitioner's claims on direct appeal; and (4) failed to raise ineffective assistance of trial counsel for trial counsel's failure to object at trial that the court erred in not swearing in prospective jurors in accordance with New York Criminal Procedure Law § 270.15(1)(a). The Court discusses the merits of each of these arguments in turn and finds them to be without merit.

### (1) Jury Note

Petitioner first argues that he received

ineffective assistance of appellate counsel because his appellate counsel failed to argue that it was inappropriate for the trial court to refuse to respond to a jury note that asked the court about the distinction between depraved indifference murder and intentional murder. Specifically, during deliberations, the jury questioned "does the depraved indifference encompass intentional murder or [vice versa] or neither[?]" (Tr. 944.) The judge declined to answer this question but did read to the jury the definitions of depraved indifference murder and intentional murder. (Tr. 950.) The trial court did not, however, define the term "carelessness" as had been requested by defense counsel. (Tr. 945-47.) The jury asked no further questions concerning this issue. Nonetheless, petitioner argues that the trial court's response to the jury's inquiry was insufficient and that appellate counsel should have raised this argument on appeal.

New York Criminal Procedure Law § 310.30 provides that the jury "may request the court for further instruction or information" at any time during its deliberations. Upon receipt of such a request, the court "must give such information or instruction as the court deems proper." N.Y. Crim. Proc. Law § 310.30. The court must, however, respond meaningfully to the jury's request for further information or instruction. *People v. Gonzalez*, 56 N.E.2d 574, 576 (N.Y. 1944); *see also Bollenbach v. United States*, 326 U.S. 607, 612 (1946) ("[W]hen a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy."). The trial court "is vested with some measure of discretion in framing its response and is in the best position to evaluate the jury's request in the first instance." *People v. Malloy*, 434 N.E.2d 237, 240 (N.Y. 1982). The trial court may, in its discretion, choose to merely reread the charge to the jury in response to their question or may choose to not respond at all. *See id.* at 237 ("Where, however, after considerable deliberation, the jury requests clarification concerning the meaning of

reasonable doubt and the original instruction is adequate, it is not error for the Trial Judge, as he did here, to respond to the request by rereading that instruction."). This is not to say that a mere rereading of an original charge will in every case be the appropriate course to follow. "Indeed, if the jury subsequently expresses the need for further instructions, it may well constitute error simply to repeat the charge, for then it may be obvious that the jurors have been left without adequate guidance." *Id.* at 240. Factors to be considered by the Court in determining whether a trial court's response to a jury inquiry was sufficient include "the form of the jury's question, the particular issue, the substance of the supplemental instruction and the presence or absence of prejudice to defendant." *People v. Cataldo*, 688 N.Y.S.2d 265, 267 (App. Div. 1999).

During deliberations, the jury sent a note to the court requesting clarification on parts of the charge they had received. Specifically, the jury asked for the definition of intentional murder, depraved indifference murder, and "whether depraved indifference murder encompassed intentional murder, visa-versa, or neither." (Tr. 950). The court repeated the definition of intentional and depraved indifference murder for the jury but refused to answer the third question. (Tr. 950-55). Trial counsel for the petitioner did not contest the refusal to answer the third question. It was inappropriate for the court to respond to that question. The distinction between intentional and depraved indifference murder is a distinction for the trier of fact to make based on the evidence. *Sanchez*, 777 N.E.2d at 210. Trial counsel, perhaps recognizing this, suggested that in response to the first two questions, the court further explain the distinction between recklessness and depraved indifference. (Tr. 945). The court rejected this suggestion and simply repeated the jury charge as given. (Tr. 946). The jury charge for depraved indifference murder read, in relevant part:

> Conduct evincing a depraved indifference to human life is much more serious and blameworthy than conduct which is merely reckless. It is conduct which, beyond being reckless, is so wanton, so deficient in moral sense and concern, so devoid of regard for the life or lives of others, as to equal in blameworthiness intentional conduct which produces the same results. In determining whether a person's conduct evinced a depraved indifference to human life, a jury would have to decide whether the circumstances surrounding his or her reckless conduct, when objectively viewed, made it so uncaring, so callous, so dangerous, and so inhuman, as to demonstrate an attitude of total and utter disregard for the life of the person or persons in danger.

(Tr. 953-54). That definition did meet the requisite distinction that existed at the time under New York law, as set forth in *Register* and *Sanchez*, discussed throughout this opinion. The form of the jury's question asked for guidance on the distinction between the two charges, and the trial court determined, in its discretion, that the best way to clarify that difference was to re-read the definition of each charge to the jury consecutively. There is no basis to conclude that the trial court's response was inappropriate, and, thus, appellate counsel was not ineffective for failing to raise this issue.[7]

---

[7] Petitioner argues that *People v. Lourido*, 516 N.E.2d 1212 (N.Y. 1987), supports his argument that the trial court committed error by not

Moreover, the jury did not request any further clarification or express any confusion by the trial court's answer to its question. *See People v. Almodovar*, 464 N.E.2d 463, 466 (N.Y. 1984) ("The record does not indicate that it had misinterpreted the request or that the jurors were dissatisfied with the instructions given. They did not ask for further instructions on justification and defense counsel did not request it until after the jury retired. Under the circumstances, the court did not err when it refused to go beyond the jury's request."); *Malloy*, 434 N.E.2d at 240 ("In determining the most appropriate way to handle that request, the court took the view that the original charge could be made no clearer and that any attempt to alter it in light of the extensive deliberations already undertaken would only generate confusion. Although the better practice would have been to inquire of the jury what was unclear to them, they gave no indication after the original charge was repeated that their concern had not been satisfied."). Furthermore, it is unclear how, had the court specifically addressed whether depraved indifference murder encompassed intentional murder or vice versa, the jury's verdict would have been different. The jury found petitioner guilty only of depraved indifference murder. Thus, petitioner has shown no prejudice resulting from the trial court's refusal to answer that part of the jury's question.

---

responding to the jury's question. However, in that case, the court found that the trial court's "response was not meaningful because it was no response at all." *Id.* at 1216. Here, the court did respond to the jury's question, in the manner that the court thought most appropriate. "Not every failure to comply with a jury's request for information during deliberation is reversible error. The test is whether the failure to respond seriously prejudiced the defendant." *Id.* Here, petitioner was not seriously prejudiced when the court, in its discretion, decided to clarify the distinction between depraved indifference murder and intentional murder by re-reading the jury charge on each.

In sum, the trial court did meaningfully respond to the jury's request for information by defining depraved indifference murder and intentional murder. Therefore, the Court concludes that it was not ineffective assistance of counsel for appellate counsel not to raise this argument on appeal. Appellate counsel need not raise every possible claim on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. at 288 (citing *Jones*, 463 U.S. at 750-54). Appellate counsel made several claims on appeal, and viewed those claims as more meritorious than this present claim, which, as discussed above, was a weak claim at best. In fact, in an affidavit filed in response to petitioner's first writ of error coram nobis, petitioner's appellate counsel states that this issue was "considered and rejected by [him]" because the "trial court's response in recharging the jury on the elements of both counts of murder was sufficient, as the jury evinced no further confusion and was able to reach a verdict as to both counts." (Aff. In Response to Motion for a Writ of Error Coram Nobis at 4 (Dec. 14, 2007).) Thus, appellate counsel's decision to omit a claim regarding this issue on appeal did not fall "'outside the wide range of professionally competent assistance'" and, therefore, cannot form the basis of a claim for ineffective appellate counsel under the Sixth Amendment. *Mayo*, 13 F.3d at 533 (quoting *Claudio*, 982 F.2d at 805).

(2) Depraved Indifference Murder Claims

Petitioner also argues that, on direct appeal, appellate counsel should have argued that trial counsel was ineffective for failing to make a specific objection that the evidence was insufficient to establish depraved indifference murder. Specifically, petitioner argues that the decision of the New York Court of Appeals in *People v. Sanchez*, 777 N.E.2d 204 (N.Y. 2002), should have put the lower court and attorneys on notice that, where the evidence in

a one-on-one killing unmistakably demonstrates an intent to kill, a depraved indifference conviction may not stand. In connection with this claim, petitioner further argues that appellate counsel should have argued that trial counsel was ineffective for failing to object to and preserve the issue that depraved indifference is the mens rea element of the crime of depraved indifference murder. Thus, petitioner essentially argues that appellate counsel's failure to raise these arguments concerning trial counsel's failure to raise certain objections regarding the depraved indifference murder statute, rendered appellate counsel ineffective. The Court finds petitioner's claims without merit.

In attempting to meet the first prong of *Strickland*, petitioner must do more than show that his appellate counsel "omitted a nonfrivolous argument." *Mayo*, 13 F.3d at 533 (citing *Jones*, 463 U.S. at 754). Instead, petitioner must demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*

Petitioner argues that the legal insufficiency argument was significant because the evidence at trial was insufficient to establish depraved indifference murder. As support for his argument, petitioner relies on cases decided after his trial in 2002 (as discussed above), which were part of the fundamental shift in New York's homicide jurisprudence in which defendants involved in one-on-one confrontations with victims could not be convicted of depraved-indifference murder except in unusual circumstances. *See, e.g.*, *People v. Suarez*, 844 N.E.2d 721 (N.Y. 2005).

Although this Court concluded that petitioner's sufficiency claim would fail even under these cases and under the law when petitioner's conviction became final, that determination is not necessary for petitioner's

ineffective assistance claim. More specifically, in order for appellate counsel to have successfully argued that petitioner was denied effective assistance of trial counsel, petitioner would have had to show that trial counsel's failure to preserve the legal insufficiency claim was outside the range of reasonable professional assistance "*viewed as of the time of counsel's conduct.*" *Strickland*, 466 U.S. at 690 (emphasis added); *see also Soto v. Conway*, 565 F. Supp. 2d 429, 436 (E.D.N.Y. 2008) ("[I]n reviewing counsel's performance for cause, this Court considers not what the law of New York was or is, but rather whether, in light of the case law known to him at the time, counsel's conduct fell below an objective standard of reasonableness."). Thus, trial counsel's conduct would have to be measured as of 2002.

Under the legal framework in New York discussed in detail above, the evidence at trial was clearly sufficient for a rational jury to convict defendant under New York's depraved indifference murder statute at the time of trial in 2002. In fact, in July 2002, just four months prior to petitioner's trial in October 2002, the New York Court of Appeals decided *People v. Sanchez*, 777 N.E.2d 204 (N.Y. 2002), and held that a jury could reasonably conclude that a one-on-one point-blank shooting supported a depraved indifference murder conviction. *See id.* at 206 ("[A]ccepting the jury's determination that the killing . . . was not intentional, defendant's shooting into the victim's torso at point-blank range presented such a transcendent risk of causing his death that it readily meets the level of manifested depravity needed to establish murder under Penal Law § 125.25(2)."). As the Court of Appeals later explained in *Policano,* in reviewing its prior jurisprudence:

> *Sanchez* epitomized our depraved indifference jurisprudence under the *Register* regime, the hallmarks

of which – at least with respect to fatal one-on-one shootings or knifings – were twofold. First, even though such an attack by its very nature presents compelling circumstantial evidence of intent to cause death, we considered the question of defendant's state of mind to be a classic matter for the jury. This strain of thought in our decisional law long predated *Register*. . . . Second, the factual setting in which the risk-creating conduct must occur, viewed objectively – *Register*'s standard for determining whether there are circumstances evincing a depraved indifference to human life – was fulfilled if a defendant's actions, created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range.

859 N.E.2d at 492. The Court of Appeals further explained:

[U]nder *Register* – and until we started to recast "under circumstances evincing a depraved indifference to human life" post-*Sanchez* – where both intentional and depraved indifference murder were charged in one-on-one shootings or knifings, these counts were submitted to the jury for it to sort out the defendant's state of mind *unless there was absolutely no evidence whatsoever that the defendant might have acted unintentionally*. That a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference. To the contrary and as the dissenters in both *Register* and *Sanchez* vociferously protested, under the *Register* formulation the very facts establishing a risk of death approaching certainty and thus presenting compelling circumstantial evidence of intent – for example, a point-blank shooting of the victim in the head – likewise demonstrated depraved indifference.

*Id.* at 493 (emphasis added); *see also Policano v. Herbert*, 507 F.3d 111, 114 (2d Cir. 2007) ("The formulation of the law established by *Register* 'remained static through [the Court's] decision in [*Sanchez*].' *Sanchez* therefore 'reaffirmed *Register*.'" (quoting *Policano*, 859 N.E.2d at 489)); *People v. Baptiste*, 853 N.Y.S.2d 719, 722 (App. Div. 2008) ("As noted above, *Sanchez* indicated that there was no requirement that the defendant's conduct indiscriminately endanger others, and explained that circumstances evincing a defendant's brutality and savagery were collateral and unnecessary . . . . In shifting its focus from recklessness and gravity of the risk to the existence of the specific factual circumstances deemed unnecessary in *Sanchez*, the decision in *Payne* represents the first instance in which the Court declined to treat the question of whether the defendant acted with a reckless state of mind as a classic matter for the jury" (quotations and citations omitted)).

Given the *Register/Sanchez* legal framework in New York at the time of petitioner's trial in 2002, both trial and appellate counsel could have reasonably

believed that it would have been utterly futile to argue that the evidence was insufficient to sustain depraved indifference murder, and counsel cannot be deemed incompetent for failing to predict that the New York Court of Appeals would later overrule *Sanchez* and *Register*. *See James v. Coughlin*, 22 F.3d 427, 429 (2d Cir. 1994); *see also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("Counsel is not required to forecast changes in the governing law."); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require [appellate] counsel to forecast changes or advances in the law, or to press meritless arguments before a court."), *cert. denied*, 510 U.S. 852 (1993); *accord United States ex rel. Roche v. Scully*, 739 F.2d 739, 742-44 (2d Cir. 1984). Here, in light of petitioner's failure to contest at trial that he had shot Jones and in light of petitioner's assertion at trial than he did not intend to kill the victim, it would have been frivolous, and completely contrary to the case petitioner's counsel presented at trial, to argue to the trial court on a legal insufficiency claim that there was no evidence that petitioner acted unintentionally. Nonetheless, trial counsel did submit a motion to dismiss the depraved indifference murder count at the conclusion of the trial, thus preserving the issue. (*See* Aff. in Response to Motion for a Writ of Error Coram Nobis at 4 (Dec. 14, 2007).)

Thus, neither trial nor appellate counsel can be held to be ineffective when they reasonably relied on the interpretation of New York law regarding depraved indifference murder as it was at the time of petitioner's trial. Therefore, trial counsel's purported ineffectiveness was neither a significant nor obvious issue to appellate counsel, and appellate counsel's decision to omit a claim of ineffective trial counsel for this ground on appeal did not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Accordingly, appellate counsel's decision to pursue and

focus on other issues, rather than those suggested by petitioner, hardly makes counsel's advocacy ineffective. *See Soto*, 565 F. Supp. 2d at 436 (stating, in connection with New York's depraved indifference law, "[d]espite the changes that have occurred since [petitioner's trial in 2002], it is unlikely that trial counsel's failure to preserve this claim *at that time* would have constituted ineffective assistance. Because appellate counsel recognized as much in deciding not to raise such a claim, this Court cannot find her failure to make this challenge to constitute ineffective assistance of appellate counsel."); *see also Alexander v. Graham*, No. 07-CV-59 (NG), 2008 WL 4239167, at *6 (E.D.N.Y. Sept. 11, 2008) ("A rational trier of fact could have considered that Alexander had known Lee as his sister's boyfriend and father to his niece, and concluded that, during this dispute, Alexander was scared because he did not know if Lee intended to harm, and that, like the defendant in *Sanchez*, Alexander shot Lee in his upper chest rather than somewhere certain to cause death, intending to disable rather than kill him. . . . Thus, had Alexander's trial counsel objected to the sufficiency of the evidence of depraved indifference murder on the ground that the jury would be warranted only in finding intentional murder, such an objection would have been unsuccessful."); *Holley v. Phillips,* No. CV-03-1852 (DGT), 2008 WL 2938043, at *7 (E.D.N.Y. July 28, 2008) (stating sufficiency of evidence for depraved indifference murder established under *Sanchez* where petitioner shot victim multiple times at point blank range and, thus, petitioner's trial and appellate lawyers were not ineffective for failing to pursue such argument); *Farr*, 2007 WL 1094160, at *23-*24 (concluding that counsel was not ineffective for failing to object to sufficiency of the evidence as to depraved indifference murder because the controlling law was *Register* and because "[t]he testimony was undisputed that 'Antoine' started the fight in the park, not petitioner, and that petitioner

drew a gun only after Joseph started to 'make a move on' petitioner. Viewing the evidence in the light most favorable to the verdict, the jury may have determined that petitioner spontaneously shot Howard rather than acted with premeditation or with an intention to use the gun when he went to the park. . . . The jury could have also inferred that petitioner fired the gun to disable or frighten Howard, rather than to kill him.").

Moreover, an examination of the entire record also demonstrates the reasonableness of appellate counsel's decision not to pursue the issue of whether trial counsel was ineffective for failing to argue legal insufficiency. At trial, petitioner did not contest that he had shot Jones or that Jones had died from a single gunshot wound to the head. Instead, petitioner argued that the shooting was accidental, negligent, and unexpected, not intentional. (Tr. 51-52.) In fact, it was asserted at trial that after the gun went off, Gaskin stated that he "didn't mean to do it." (Tr. 52.) Moreover, on direct appeal, appellate counsel argued the underlying claim itself—that the evidence was insufficient to sustain petitioner's conviction for depraved indifference murder. Although the Appellate Division noted that this issue was not preserved for appellate review, the opinion nonetheless held that "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence." *People v. Gaskin*, 802 N.Y.S.2d 751, 752 (App. Div. 2005) (internal citations omitted). Accordingly, even if trial counsel had preserved this issue for review, the Appellate Division's holding on appeal would have been the same.

It is well established that in assessing the effective assistance of counsel, an attorney's performance is to be viewed "in totality and as

of the time of the representation." *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981); *accord Strickland*, 466 U.S. at 690. Thus, when judged on "facts of the particular case, *viewed as of the time of counsel's conduct*," *Strickland*, 466 U.S. at 690 (emphasis added), trial counsel provided meaningful representation at all stages of the proceedings. *See Harris v. Artus,* No. CV-06-1337, 2008 WL 4360991, at *6 (E.D.N.Y. Sept. 22, 2008) ("[E]ven assuming, *arguendo*, that petitioner's depraved indifference/intentional murder claim was colorable during the pendency of his appeal, it was well within his appellate counsel's discretion to omit that weaker argument in favor of the stronger evidentiary claims."). In sum, it was not ineffective under the standard set forth in *Strickland* for appellate counsel to fail to raise ineffectiveness of trial counsel in purportedly failing to preserve the legal insufficiency claim.

### (3) Failure to "Federalize" and Exhaust Petitioner's Claims

Petitioner argues that his appellate counsel was ineffective because he did not "federalize" each of defendant's eight claims on direct appeal—that is, fairly present petitioner's federal claims on appeal to the state court, in order that the state court could pass upon and correct alleged violations of petitioner's federal rights. Similarly, petitioner argues ineffective assistance of appellate counsel for appellate counsel's failure to fully exhaust all of petitioner's claims on appeal. As discussed below, the Court finds that these claims are without merit.

Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), a petitioner must have fairly presented his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d

Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[ted] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the petitioner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

There is, however, no requirement that counsel present arguments on appeal in federal terms. Although, on habeas review, a petitioner's claims must have been "fairly presented" to the state courts, alerting those courts to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan*, 526 U.S. at 845, there is no requirement that claims be presented as such in order for appellate counsel to be deemed effective.[8] "A habeas petitioner's federal constitutional claims may be considered exhausted when the claims were 'fairly' — though not explicitly — presented to the state courts." *Daye*, 696 F.2d at 191; *see also Picard*, 404 U.S. at 275; *Holland v. Scully*, 797 F.2d 57, 64 (2d Cir. 1986); *Bennet v. Artuz*, 285 F. Supp. 2d 305, 311 (E.D.N.Y. 2003). This does not necessarily require that the claim be made in federal terms or using federal decisional authority. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (finding claim that "the evidence was insufficient" was sufficient to exhaust petitioner's claims). The constitutional claim made in federal court "need not be identical with the one advanced to the state court, but it must be its 'substantial equivalent'" *Fielding v. LeFevre*, 548 F.2d 1102, 1107 (2d Cir. 1977) (quoting *Picard*, 404 U.S. at 277).

Appellate counsel is not required to raise all arguable issues on appeal, even if explicitly directed by defendant to raise certain issues. *Jones v. Barnes*, 463 U.S. 745 (1983). "For judges to second-guess reasonable professional judgments and impose on appointed counsel a

---

[8] The cases cited by petitioner on this issue discuss the general habeas review requirement that all claims in a prisoner's petition have been exhausted in state court. None of these cases stand for the proposition that appellate counsel's failure to exhaust the claims constitutes ineffective assistance of counsel.

duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . ." *Id.* at 754. To be sure, "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Id.* at 753. New York courts have agreed that "[r]easonable professional judgments by appellate attorneys as to what are the most promising issues on appeal should not be second-guessed." *People v. Decker*, 523 N.Y.S.2d 920, 922 (App. Div. 1987) (internal quotations and citation omitted).

In an affidavit in response to petitioner's motion for a writ of error coram nobis, appellate counsel notes that "all meritorious arguments were advanced in the brief submitted to the [c]ourt and are federally preserved in the brief and leave application to the Court of Appeals." (Aff. in Response to Second Motion for a Writ of Error Coram Nobis at 4 (Aug. 4, 2008).) Appellate counsel filed a six-point brief that addressed the issues that were, in counsel's judgment, the core issues in the case. In applying for leave to appeal to the New York Court of Appeals, counsel selected what he believed were the most meritorious issues for presentation: whether petitioner's conviction for depraved indifference murder could include intentionally shooting someone in the head at point blank range, and in the alternative, whether the jury should have been charged with manslaughter in the second-degree as a lesser-included offense of depraved indifference murder. (Letter to Hon. Judith S. Kaye from Robert Kenney, regarding *People v. Wayne Gaskin* Leave Application, at 1-2, Dec. 27, 2005.) "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983). Moreover, although appellate counsel's brief did not cite to federal cases, as discussed *supra*, this is not a requirement for effective counsel, and the brief does mention the federal Constitution and

other federal rights where appropriate. Accordingly, this Court finds that appellate counsel satisfied the constitutional standard of effective assistance of counsel by capably focusing on and presenting nonfrivolous issues on appeal.

### (4) Swearing In Jurors

Petitioner's final argument alleging the ineffective assistance of appellate counsel concerns the procedure by which prospective jurors were sworn in to the panel at *voir dire*. Petitioner asserts that the prospective jurors were not administered the oath to answer questions truthfully when they were seated in the jury box, in violation of petitioner's constitutional rights. As set forth below, the argument has no merit, and, thus, appellate counsel was not ineffective for failing to raise it.[9]

New York Criminal Procedure Law § 270.15(1)(a) provides:

> If no challenge to the panel is made as prescribed by section 270.10, or if such challenge is made and disallowed, the court shall direct that the names of not less than twelve members of the panel be drawn and called as prescribed by the judiciary law. Such persons shall take their places in the jury box and shall be immediately sworn to answer

---

[9] To the extent that petitioner also raises this as an independent habeas claim (beyond ineffective assistance), any violation of New York Criminal Procedure Law § 270.15(1)(a) is a violation of state law, for which petitioner is not entitled to relief. *Pinkney v. Senkowski*, No. 03 Civ. 4820 (LTS) (MHD), 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006). Accordingly, "even if [petitioner] demonstrated that such a violation occurred, he would be entitled to no relief here, since the writ may be granted only to remedy a violation of federal law." *Id.* (citing *Estelle*, 502 U.S. at 67-68).

truthfully questions asked them relative to their qualifications to serve as jurors in the action.

The case relied on by petitioner to support his ineffective assistance claim, *People v. Patterson*, 611 N.Y.S.2d 217 (App. Div. 1994), involved a situation in which the trial court refused to swear the panel of prospective jurors at all prior to the voir dire. In that case, "[t]he court, over a continuing defense objection, conducted initial screening questioning of prospective jurors regarding their knowledge of the case, their familiarity with the defendant and the attorneys, their knowledge about potential witnesses, and indeed, the jurors' very ability to impartially serve on the jury, *without first directing that they be administered an oath*." *Id.* at 219 (emphasis added). Furthermore, the language of the statute itself provides that the oath may be administered to more than twelve members of the panel at a time. In fact, *voir dire* itself may be conducted with more than twelve jurors, seated within and outside the jury box. As the New York Court of Appeals has noted, New York Criminal Procedure Law § 270.15(1)(a) "was amended to allow 'not less than twelve' prospective jurors to be called in order to 'permit the simultaneous examination of as many jurors as possible, and thus reduce the number of rounds required to complete the selection.'" *People v. Serrano*, 850 N.E.2d 1151, 1152 (N.Y. 2006) (finding that the requirements of § 270.15(1)(a) were met when *voir dire* was conducted after "[a]t the start of jury selection, the trial court called 44 individuals for simultaneous questioning, placing 12 in the jury box and the others in four front rows of the courtroom"). This allows judges to conduct *voir dire* in a more efficient manner.

The oath was administered to the entire jury panel prior to voir dire. (*Voir Dire* Tr. July 11, 2002, at 10; *Voir Dire* Tr. July 15, 2002, at 68.) This occurred twice during *voir dire*, since the jury was selected from prospective jurors comprising two different panels. Moreover, each juror selected to sit on the jury was sworn upon selection. (*See Voir Dire* Tr., July 12, 2002, at 339; *Voir Dire* Tr. July 15, 2002, at 64, *Voir Dire* Tr. July 16, 2002, at 160; *Voir Dire* Tr. July 17, 2002, at 356.) Petitioner has pointed to no prejudice resulting from the manner in which the jury was sworn. *See People v. Rodriguez*, 821 N.Y.S.2d 331, 332 (App. Div. 2006). During voir dire the trial judge repeatedly asked the various panels of potential jurors whether there was any reason why they could not serve as fair and impartial jurors, and none of the jurors selected suggested that they could not do so. The trial court also advised all jurors that they must apply the law as instructed by the trial court. All agreed that they could do so. Accordingly, this Court holds that petitioner's claim that the jury was improperly sworn is without merit. Therefore, it was not error for appellate counsel to fail to raise this claim, as this issue assuredly was not "clearly stronger than those presented" on appeal. *See Mayo*, 13 F.3d at 533.

\* \* \*

In short, the Court concludes that there were no "significant and obvious" issues regarding trial counsel's performance that should have been presented on appeal. The Court also concludes that petitioner's argument regarding the jury's note lacked merit and need not have been raised on appeal. Therefore, it was not objectively unreasonable for appellate counsel to omit the above-discussed claims from the direct appeal. Accordingly, this Court concludes that the state courts did not unreasonably apply federal law in failing to find petitioner's appellate counsel ineffective on these bases.

b. Prejudice Inquiry

Because the petitioner has failed to satisfy

the first prong of the *Strickland* test in relation to any of his claims regarding the ineffective assistance of his appellate counsel, the Court need not discuss the second prong of *Strickland*. However, even assuming *arguendo* that appellate counsel's failure to raise any of Gaskin's claims was objectively unreasonable, a prisoner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. *See Lynn v. Bliden*, 443 F.3d 238, 245 (2d Cir. 2006).

Here, petitioner has failed to show that there was a reasonable probability that his appeal would have been successful absent appellate counsel's alleged deficient performance. For the reasons discussed *supra*, there is no basis to conclude that the claims petitioner alleges appellate counsel should have raised would have succeeded. In fact, when petitioner moved for two separate writs of error coram nobis on these grounds, his claims regarding ineffective assistance were rejected by the Appellate Division and the Court of Appeals. *See People v. Gaskin*, 852 N.Y.S.2d 798 (App. Div.), *leave to appeal denied by* 890 N.E.2d 252 (N.Y. 2008); *People v. Gaskin*, 863 N.Y.S.2d 925 (App. Div. 2008); *leave to appeal denied by* 902 N.E.2d 444 (N.Y. 2009). As set forth *supra*, these claims have no merit and, even if raised on appeal, would have been unsuccessful.

In any event, as discussed extensively above, under current law, petitioner's evidence fits into the narrow category of cases where depraved indifference murder properly applies, and petitioner's evidence is clearly distinguishable from the cases the Court of Appeals reversed as part of New York's new depraved indifference rule. Thus, if the New York courts, at the time petitioner's direct appeal was decided in 2005, viewed the evidence in the light most favorable to the prosecution, *People v. Contes*, 454 N.E.2d 932, 932 (N.Y. 1983), they would have concluded that it was legally sufficient to establish the

petitioner's guilt of depraved indifference murder beyond a reasonable doubt because, as noted *supra*, a rational jury could reasonably conclude that the petitioner's act was not just reckless, but evinced a depraved indifference to human life when he pulled out a single action revolver and pointed it at the side of Jones's head from a distance of about one foot, in the middle of a heated altercation and while surrounded by bystanders. Thus, petitioner also fails to satisfy the "prejudice" prong in *Strickland*.

In sum, after carefully reviewing the merits of all of petitioner's claims, the Court concludes that the state court's decisions on his claims were not contrary to, nor an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented in state court.

## III. CONCLUSION

For the foregoing reasons, Gaskin has demonstrated no basis for relief under 28 U.S.C. § 2254. Accordingly, the instant petition is denied in its entirety on the merits. As petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 30, 2009
Central Islip, NY